**WO**                                                                                                    **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roman Wroclawski, | No. CV 09-0977-PHX-MHM (DKD) |
| Petitioner, | **ORDER** |
| vs. | |
| United States of America, | |
| Respondent. | |

Before the Court is Petitioner's Motion for Release Pending Resolution of Habeas Corpus Proceedings. (Dkt.# 24.) The motion is fully briefed. (Dkt.## 27-28.) The Court will grant Petitioner's motion.

**I.      Background**

Petitioner is a native of Poland who is now subject to a Certificate of Extraditability (Certificate) entered by Magistrate Judge Michelle H. Burns in MJ No. 07-0302M (MHB). Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the finding of probable cause underlying the Certificate. The Court has already resolved Petitioner's Motion for Emergency Stay of Extradition pending resolution of his habeas corpus petition—that motion was denied as moot because 18 U.S.C. § 3188 automatically tolls the Certificate during the pendency of Petitioner's habeas corpus proceeding (Doc. # 20 at 2). See Barrett v. United States, 590 F.2d 624, 626 (6th Cir. 1978).

1   The Court explained, however, that resolution of Petitioner's Motion for Emergency
2   Stay did not resolve the question of whether Petitioner should be detained during the
3   pendency of his habeas corpus petition.  Consequently, the Court directed Petitioner to file
4   a motion seeking release that identified the source(s) of authority to permit Petitioner's
5   release and whether release under those circumstances (if available) would be appropriate.
6   Petitioner has filed his motion for release, the Government has filed its response, and
7   Petitioner has replied. (Dkt.## 24, 27-28.)

## II.    The Court's Authority to Order Petitioner's Release

The threshold question is whether the Court has the authority to order Petitioner's release while his habeas corpus petition is adjudicated.  Petitioner argues that the Court does possess this authority, and it is derived from three independent sources: (1) the federal common law doctrine of "special circumstances"; (2) the Court's inherent power to issue a Writ of Habeas Corpus; and (3) the Fifth Amendment's Due Process Clause (Dkt.# 24 at 2-6).

The Supreme Court in Wright v. Henkel established that district courts may release relators when "special circumstances" are present.  190 U.S. 40, 63 (1903).  And while Henkel arose during the pre-certification stage of extradition, subsequent case law has made clear that the special circumstances test is applicable in both the pre- and post-certification stages of extradition.  Indeed, the Ninth Circuit itself utilized this test to determine whether a relator whose habeas petition was unsuccessful was entitled to bail pending appeal. Salerno v. United States, 878 F.2d 317, 317-318 (9th Cir. 1989).  And both the First and Second Circuits have found no distinction between relators seeking bail before or after issuance of certificates of extraditability.  See Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir. 1981); Beaulieu v. Hartigan, 554 F.2d 1, 1-2 (1st Cir. 1977).  This authority, along with the myraid district court cases also applying the special circumstances test cited by Petitioner are persuasive.

In opposition, the Government contends that Henkel only authorized the issuance of bail during the pre-certification stage of extradition and the extradition statute—18 U.S.C.

1 § 3184—mandates detention after the certificate of extraditability has issued. There is no
2 doubt that Henkel was a pre-certification case and did not plainly state that the "special
3 circumstances" test extends post-certification. Specifically, the Government avers that the
4 Supreme Court explicitly stated that it would be inconsistent with the federal extradition
5 statute to authorize bail in the post-certification stage. (Dkt.# 27 at 3.) But the Government
6 has failed to cite a single case to support its reading of Henkle and even identifies a district
7 court case that flatly rejected this precise argument. See Garcia v. Benov, No. CV 08-07719
8 (C.D. Cal. April 13, 2009) (finding no distinction in pre- or post-certification application of
9 special circumstances test). In the alternative, the Government contends that the dearth of
10 authority permitting bail under special circumstances at any time during the extradition
11 process is simply wrong. This unsupported argument is unpersuasive.

12 Finally, the Government argues that its interest in meeting treaty obligations militates
13 toward a finding that bail is not appropriate for relators post-certification. But this argument
14 finds no support in any case law and the Government does not in any way explain how
15 Petitioner's release on bail would interfere with the execution of the Government's treaty
16 obligations when it explicitly concedes that Petitioner is not a flight risk. (Dkt.# 27 at 9) ("the
17 United States concedes [] that there is no evidence to suggest that Petitioner is a flight risk.")

18 Because the doctrine of special circumstances is well-settled, the Court is satisfied that
19 it possesses the authority to grant Petitioner's release during the pendency of his habeas
20 corpus petition. Consequently, the Court need not reach Petitioner's arguments that the
21 Court's inherent authority to grant a Writ of Habeas Corpus or the Fifth Amendment's Due
22 Process Clause supply concurrent authority to grant Petitioner's release on bail.

23 **III.    Whether Special Circumstances Exist Justifying Release**

24 Having determined that the Court has the authority to order Petitioner's release while
25 his habeas corpus petition is pending, the remaining question is whether the Court should do
26 so. While Petitioner's extradition case was pending before Magistrate Judge Burns, she
27 explicitly determined that special circumstances existed that justified Petitioner's release (In
28 the Matter of the Extradition of Wroclawski, Mag. No. 07-302-M (MHB), Doc. # 60 at 8-9

(Magistrate Case)). And now, Petitioner claims that those special circumstances have been slightly modified but are still present. In support of Petitioner's argument that he presents special circumstances warranting release, he submits the affidavits of David Toledo, who interviewed U.S. Army Special Forces Sergeant First Class Zevon Durham, United States Marine Corps First Lieutenant and City of Tempe Police Officer Alfredo Jimenez, City of Mesa Police Officer Michael McClure, and Jeff Funicello (Dkt.# 24, Exs. 1-3, 6); letters from Olympic Champion Rulon Gardner, USA Wrestling Executive Director Rich Bender, Lisa Hartman, Peggy Roberts, Thomas and Ann Funicello, James R. Roberts, Earl Roberts, George Williams, Bob Cavalliere, Tony Maccaroli, Heath Sims, Shon Lewis, David Spangler, Jeffrey Funicello, Dremiel Byers, Larry Ditler, Robin Roche (id. at Exs. 4-5); testimony from Petitioner's wife related to her belief that the charges against Petitioner are politically motivated (id. at Ex. 7); copies of newspaper articles supporting Petitioner (id. at Exs. 8-9); a copy of the Extradition Treaty (id. at Ex. 10); a Report on human rights in Poland by the United States Department of State (id. at Exs. 11, 13); information on Greco-Roman wrestling (id. at Ex. 12); and copies of other documents filed under seal. (Dkt.# 31, Exs. S1-S3.)

To begin, the Court notes that it is not bound by an exhaustive list of "special circumstances." In the Matter of the Extradition of Gonzalez, 52 F. Supp. 2d 725, 736 (W.D. La. 1999) (citing Beaulieu, 554 F.2d at 1). The determination of what factors to consider and how much weight to give them is within the "sound discretion" of the Court. Beaulieu, 554 F.2d at 1. Moreover, "[a] collective approach can lead to a finding of special circumstances." Magistrate Case Doc. # 60 at 8 n.1 (citing In re Molnar, 182 F.Supp.2d 684, 689 (N.D. Ill. 2002).

### A. Petitioner's Flight Risk

Petitioner first contends that he is not a flight risk and that constitutes a special circumstance warranting consideration. The district court In the Matter of Extradition of Sidali, 899 F. Supp 1342, 1351 (D. N.J. 1995), relied heavily on the fact that the relator was not a flight risk as a special circumstance warranting release. Id. at 1352. In re Mitchell is

- 4 -

1  also in accord with finding the absence of a flight risk as a special circumstance. 171 F. 289
2  (D. C. N. Y. 1909) ("the fact that [the relator] has long known of these proposed proceedings
3  and has made no effort to avoid them or escape" is a special circumstance warranting release
4  on bail).

5        The Government contends that whether a relator is classified as a flight risk cannot
6  be considered a special circumstance. Yet, the cases relied upon by the government belies
7  its position. The Ninth Circuit in <u>Salero</u> did not state that absence of a flight risk is not a
8  special circumstance. Rather, the court stated that whether someone was a flight risk was not
9  the appropriate test to determine whether a relator is entitled to bail. Nor did the Second
10 Circuit in <u>Leitner</u> hold that absence of a flight risk was not properly considered a special
11 circumstance; instead, the court found that absence of a flight risk would not be dispositive
12 of the issue. <u>U.S. v. Leitner</u>, 784 F.2d 159, 161 (2nd Cir. 1986). And in <u>Salerno</u> and <u>Leitner</u>,
13 the courts did not find other special circumstances such that, combined with the absence of
14 a flight risk, the relator was entitled to release. The Government has not introduced any
15 persuasive authority for the proposition that absence of a flight risk *cannot* be considered a
16 special circumstance.

17       As articulated above, the Government concedes that there is no evidence that
18 Petitioner is a flight risk. In fact, the Government would be hard-pressed to argue
19 otherwise—Petitioner is charged with non-violent business crimes, there is no evidence that
20 he poses a risk to the community, he does not consume alcohol or drugs, he devotes a
21 substantial amount of time to providing community service, he has no criminal record in the
22 United States, he has strong ties to his family who live in Arizona, he has a stable job, and,
23 most importantly, he has been out of custody for nearly one year without incident. Based on
24 the evidence in the record and the Government's concession that Petitioner is not a flight
25 risk, in conjunction with the evidence that Petitioner has been on release for nearly a year
26 without incident, the Court considers this to be one special circumstance warranting release.

27
28

### B. Petitioner's Work with Olympic Athletes

Magistrate Judge Burns found that Petitioner's work in preparation for the Beijing Olympics constituted a special circumstance. (Magistrate Case Dkt.# 60 at 8.) Petitioner contends that although the next summer Olympics will not take place for nearly three years, he will likely participate in the training of future athletes and will likely attend the Olympic trials. Petitioner presents letters of support from numerous athletes and individuals who request that Petitioner be released to continue with his efforts to assist them in their training. (Dkt.# 24, Exs. 4-5.) But Petitioner presents no evidence that he is currently training any athlete and the Court finds that the 2012 Olympics are too far in advance to necessitate Petitioner's involvement at this time. Consequently, the Court does not find Petitioner's speculative participation in the 2012 Olympics to constitute a special circumstance.

### C. Petitioner's Work with Military and Law Enforcement Personnel

Petitioner's focus has now changed from working with Olympic athletes to working with members of the armed forces and law-enforcement. Petitioner's expertise in the area of Greco-Roman wrestling is unique and undisputed. It is in this area that his training of military and law-enforcement personnel is particularly useful. And the affidavits of David Toledo, Alfredo Jimenez, and Joshuah Landspurg present compelling testimony that Petitioner is offering specific and unequaled assistance in their work in the military or law enforcement. Specifically, Petitioner has taught the affiants about hand-to-hand combat techniques, which present themselves at war and, at times, in the course of normal police activity. (Dkt.# 24, Exs. 1 and 3, Toledo Aff. ¶¶ 2-3, Jimenez Aff. ¶¶ 2-4, Doc. # 32, Landspurg Aff. ¶¶ 2-4.)

In response, the Government does not dispute Petitioner's unique talents or his sincerity in providing his services in support of the military or other law-enforcement personnel. Rather, the Government seemingly contends that the war effort is not meaningfully affected by Petitioner's efforts and, therefore, do not constitute a special circumstance. (Dkt.# 27 at 13). Obviously the Court cannot find that the success of U.S. military efforts or the safety of local law-enforcement depends upon Petitioner's continued

ability to train military or law-enforcement personnel in the art of Greco-Roman wrestling techniques, and Petitioner concedes as much. But a factor of that magnitude is not required to constitute a special circumstance. Rather, a special circumstance is something that is unique and not faced by all individuals facing extradition. See U.S. v. Hills, 765 F. Supp. 381, 387 (E.D. Mich. 1991) (factors faced by nearly all potential extraditees are not special circumstances). And the Court finds Petitioner's selfless and useful help to our military and law-enforcement to be compelling and fully justified to be considered a special circumstance.

### D. The Eleven Year Delay in Seeking Petitioner's Extradition and Petitioner's "Open and Notorious" Life in the United States

Petitioner was charged in Poland in 1994 with one count of bank fraud and two counts of theft.[1] Yet the Polish government did not seek his extradition until 2006, despite the fact that Petitioner lived openly in the United States and made no effort to hide his whereabouts. Magistrate Judge Burns found this lengthy delay "unexplained" and gave it consideration as a special circumstance. (Magistrate Case Dkt.# 60 at 8.) The Court finds no reason to disturb that determination and, as Petitioner notes, there is no more explanation now than there was then. The Government at oral argument offered an unsupported allegation that the investigation—after the indictment—must have taken Poland a significant amount of time, thereby necessitating a nearly 12 year delay. But this contention was not presented in the Government's opposition brief, nor does it constitute anything more than conjecture. This constitutes a special circumstance.

### E. Petitioner's Likelihood of Success

Petitioner presents two arguments in support of his claim that his habeas corpus petition is likely to succeed on its merits: the lack of probable cause for the certificate of extraditability and the fact that the charges in Poland may be time-barred. (Dkt.# 24 at 11-14.) The Court declines to express an opinion at this juncture on the merits of Petitioner's

---

[1] The Magistrate Judge did not find probable cause with respect to the bank fraud charge. (Magistrate Case Dkt.# 120 at 13-14.)

1 habeas petition, but notes that two different individuals have reached inconsistent results as
2 to whether the charges are in fact barred by the statute-of-limitations. (Magistrate Case Dkt.#
3 121 at 17-18.)  As a result, the Court finds this issue merits further scrutiny and gives it low
4 weight as a special circumstance.

### F. Whether Petitioner would be Entitled to Bail in Arizona or in Poland

6 Some district courts have used this factor as a special circumstance, In the Matter of
7 the Extradition of Nacif-Borge, 829 F. Supp. 1210, 1213 (D. Nev. 1993); In re Gannon, 27
8 F.2d 362 (Ed. D. Pa. 1928), and the Government does not dispute that Petitioner would be
9 entitled to bail for the two theft charges against him in Arizona or in Poland. Consequently,
10 the Court finds this to be a special circumstance warranting consideration.

### G. The Community's Support of Petitioner

12 This factor has been considered by the Ninth Circuit In the Matter of Requested
13 Extradition of Kirby where special circumstances were found for the petitioners. 106 F.3d
14 855, 864-65 (9th Cir. 1996).  The court reasoned "[i]t [was] not presumptous of us to
15 consider the consequences of a decision to grant or withhold bail within this larger context"
16 of the sympathy and concern for the petitioners by the public.  And the Ninth Circuit also
17 determined that while the special circumstances found by the district court were weak in
18 isolation, they were present and, when viewed in the aggregate, compelled a finding of
19 special circumstances. Here, Petitioner has introduced evidence of the community's support
20 for him.  The Government does not address this factor, nor does it introduce any opposing
21 evidence.  The Court is therefore persuaded that it is properly considered as a special
22 circumstance and warrants consideration here.

## IV. Conclusion

24 The Court is satisfied that the cited precedent supports the conclusion that it not only
25 has the authority to grant Petitioner's release, but that it should do so in this case. The Court
26 finds that this case presents several special circumstances that, when viewed cumulatively,
27 compel a finding that Plaintiff is entitled to remain released during the pendency of his
28 habeas corpus petition.  The same conditions of his release will continue to apply.

1 **Accordingly**,

2 **IT IS HEREBY ORDERED** granting Petitioner's Motion for Release during the
3 pendency of his habeas corpus petition. (Dkt.# 24.)  Petitioner will remain released pursuant
4 to the conditions established by Magistrate Judge Burns.

5 **IT IS FURTHER ORDERED** granting Petitioner's oral motion for a 60-day
6 extension of time to file an amended habeas corpus petition.  Any amended petition must be
7 filed by close of business August 7, 2009.

8 DATED this 5th day of June, 2009.

_____
Mary H. Murguia
United States District Judge